or not, the master is not liable for injury occasioned to the one through the negligence of the other."

I can discover no difference in the principles which govern the relations of the master of a vessel to the crew and the relations of a conductor of a railroad train to the brakemen; and in Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 81, it was held that the negligence of a conductor which caused the death of a brakeman was the negligence of a fellow servant, for which the company was not responsible.

As the defendant is not responsible to the plaintiff for the negligence of the captain, it follows that the complaint, in order to sustain the action, should contain an allegation that the employer was negligent either in employing or retaining the servant (2 Thomp. Neg. 1052, and cases cited), and the complaint in the case at bar contains no such allegation. In the Gabrielson Case, supra, the court held that in determining the liability of the defendant it should be guided by the principles of the maritime law, as the plaintiff's employment was a maritime contract. Judge Addison Brown, of the district court of the United States for the Southern district of New York, an eminent admiralty judge, held, in The City of Alexandria, 17 Fed. 390, that:

"The navigation of a ship from one port to another constitutes one common undertaking or employment, for which all the ship's company in their several stations are alike employed. Each is in some way essential to the others in furtherance of the common object, viz. the prosecution of the voyage. Each one, therefore, upon the principles laid down in the common-law courts, takes the risk of any negligence in the performance of his duties by any of his associates in the common employment."

Similar doctrine is enunciated in The Queen (D. C.) 40 Fed. 694.

It follows that the complaint was properly dismissed.

One exception requires consideration. The court excluded, under plaintiff's exception, evidence to show that the plaintiff asked to be put ashore at Newport, or to call a physician to attend him there. The alleged negligence of the master in delaying medical attendance is set out in the allegation of the complaint above cited, not as a separate cause of action, but only as an aggravation of the damages resulting from the orignal negligence. As such, it must fall with that cause of action as it is subsidiary thereto. The exclusion of the evidence was not, therefore, legal error.

The judgment should be affirmed. All concur.

---

(59 App. Div. 353.)

LIBERTY WALL-PAPER CO. v. STONER WALL-PAPER MFG. CO.

(Supreme Court, Appellate Division, Third Department.   March 8, 1901.)

1. CONTRACTS—PAROL ASSIGNMENT—VALIDITY.
   Plaintiff contracted to sell S. wall paper of the value of at least $25,000. Defendant corporation was organized by S. and others, and S. agreed to assign his contract with plaintiff to defendant; and defendant took possession of the contract, though no written assignment was made until just a few days before trial. Subsequent to the making of the contract with S. plaintiff made an agreement with C. that plaintiff would sell all

its wall paper to C., and would not sell to any other firm, and plaintiff failed to fill orders from defendant previously entered. Plaintiff brings this action to recover for samples manufactured for defendant in connection with the orders not filled. *Held*, that the assignment of the contract by S. to the defendant was valid, the contract not being a personal one incapable of fulfillment by others, and hence it was error to dismiss defendant's counterclaim for damages for the nonfulfillment of the orders.

2. TRIAL—TAKING QUESTIONS FROM JURY—COUNTERCLAIM IMPROPERLY DISMISSED.

Where a contract had been assigned by parol, and was not fulfilled by one of the parties, in an action to recover for work done in connection with, but not under, the contract, it was error to dismiss a counterclaim founded on the nonfulfillment of the contract, on plaintiff's motion, on the ground of the alleged invalid assignment; the questions of the assignment of the contract and plaintiff's assent thereto being for the jury.

3. APPEAL—JURY DETERMINATION NOT DISTURBED.

Where questions of fact are put in issue by the pleadings, and submitted to the jury under a proper charge, and no exception is taken thereto, the determination of the jury will not be disturbed by the appellate division of the supreme court on appeal.

Kellogg, J., dissenting.

Appeal from trial term, Saratoga county.

Action by the Liberty Wall-Paper Company against the Stoner Wall-Paper Manufacturing Company on a contract. From a judgment in favor of the defendant, and from an order denying an application for a new trial on the minutes, plaintiff appeals, and from that part of the judgment dismissing the defendant's counterclaim defendant appeals. Modified, and new trial granted.

The Liberty Wall-Paper Company is a corporation which was organized under the laws of the state of New York in October, 1898, and it has its plant and principal office for the transaction of business in the county of Saratoga, N. Y. The Stoner Wall-Paper Manufacturing Company is a corporation which was organized under the laws of the state of Iowa in July or August, 1899. On the 28th day of April, 1899, a contract in writing was entered into by and between the plaintiff and one Thomas I. Stoner, by which contract the plaintiff agreed to sell, make, and deliver to said Stoner paper hangings to the amount of between $25,000 and $50,000, and the said Stoner agreed to purchase of the plaintiff not less than $25,000 nor more than $50,000, net, in paper hangings. The details of the purchase were provided for in the contract. The price of said paper hangings was to be 10 per cent. less than the net cost of the same as sold by the Continental or National Wall-Paper Company to their largest jobbers. It was provided by said contract that Stoner should settle all bills within 30 days of the date of shipment. The contract also contained a provision as follows: "It is further agreed that these articles of agreement give to the party of the second part the exclusive sale of paper hangings manufactured by the party of the first part in states of Iowa and Nebraska, excepting points hereinafter to be agreed upon by the parties to this contract." About the time of the formation of the defendant company, and on the 24th day of July, 1899, a written agreement was entered into by and between said Stoner and others, in and by which agreement it was provided that a corporation should be organized under the laws of the state of Iowa by the name of Stoner Wall-Paper Manufacturing Company, and that as soon as such organization was completed such company should enter into a contract with the said Stoner, which contract should be in the form provided by said agreement. The agreement so to be entered into provided that the defendant company should purchase, and said Stoner should sell to said company, the stock of wall paper, paints, oils, and decorations, including the entire stock now owned and kept by said Stoner, specifying the same in detail, and also specifying certain leases and contracts, includ-

ing the following: "And the contract between said Stoner and the Liberty Wall-Paper Company, dated April 28, 1899, for the year beginning July 1, 1899; and said company agrees to assume all obligations and liabilities of said Stoner under said contract." In the agreement so to be executed there was also a provision as follows: "In the event of the Liberty Wall-Paper Company refusing to consent to the assignment by said Stoner of his contract with it above referred to, said contract shall be carried out by said Stoner, who hereby agrees to sell to the company, which is a party hereto, at its net cost to him, including all discounts, all paper and other merchandise purchased by said Stoner from said Liberty Wall-Paper Company under his contract with it." It is conceded that the contract so to be executed by the defendant and Stoner was never executed in writing, and that the assignment of the contract with the plaintiff, so to be executed by said Stoner, was not executed in writing before the commencement of this action, but the consideration for said contract, including the consideration for said assignment, was actually paid by the defendant to the said Stoner before the commencement of this action, and the defendant took possession of the property in said contract described, including the written contract executed by and between the plaintiff company and said Stoner on the 28th day of April, 1899. Three or four days prior to the time when Stoner was sworn as a witness on the trial of this action there was written on the contract of April 28th an assignment as follows: "All my interest in the within is hereby assigned to the Stoner Wall-Paper Manufacturing Company;" and the same was signed by Thomas I. Stoner. After the incorporation of defendant, and about the middle of August, said Stoner came to the office of the plaintiff, and purchased of the plaintiff, for the defendant, three sets of blocks for the manufacture of wall paper, the purchase price of which was paid by the defendant. Stoner then requested the plaintiff to make for the defendant samples from said three sets of blocks. An agreement was thereupon made for the making of such samples, and the samples were in fact made and delivered to the defendant. The agreement in regard to making samples for the defendant was in connection with an agreement to give a further order for wall paper at prices mentioned in the agreement of April 28th, the details of which agreement are a matter of dispute between the parties hereto. During the month of September, and up to September 19th, Stoner had frequent interviews with officers of the plaintiff, and the matter of plaintiff's contract with Stoner and with the defendant, and also the matter of plaintiff and defendant entering into an agreement with the Continental Wall-Paper Company, was discussed. Stoner told officers of the plaintiff during that time that he had formed the defendant corporation, and that he was acting for it, and that he had assigned the contract of April 28th to the defendant. Between September 6th and 16th Stoner selected, in the name of the defendant, wall paper from the samples that had been prepared by the plaintiff; and a memorandum of these selections was taken by the vice president of the plaintiff, in the presence of Stoner, and written on an order blank of the plaintiff. It was dated August 26th, and provided that the goods ordered should be sent to Stoner Wall-Paper Company as soon as made, and that no countermand would be accepted. The net amount of the goods thus selected, not taking into account the special discount of 10 per cent. mentioned in the contract of April 28th, was $13,612.05. The defendant insists that this was an absolute order for the goods described in it, while the plaintiff insists that it was a memorandum order only, not binding upon the defendant. On the 6th day of September, 1899, a further memorandum of wall paper was made on order blanks the same as those used for the order dated August 26th. This order was in the name of the defendant, and was delivered to the plaintiff, and covered a large quantity of wall paper, to be delivered, as claimed by the defendant, under the contract of April 28th. The plaintiff also insists that this was a memorandum order only, not binding upon the defendant. On the 19th day of September, 1899, the plaintiff entered into a contract with the Continental Wall-Paper Company, in and by which contract the plaintiff agreed to sell to the Continental Company, and the Continental Company agreed to purchase of the plaintiff, the entire product of wall paper manufactured by the plaintiff on the 1st day of July, 1899, to and including the 1st day of July,

1900; and this contract provides that no merchandise shall be sold by the plaintiff to any individual firm or corporation during the term of the agreement without the express sanction of the Continental Company, except to persons, firms, and corporations named in the agreement; but this exception does not affect the matter here in controversy. The contract also expressly provides that the plaintiff can carry out its contracts with certain specified persons, which, as the contract was drafted, included said Stoner; but the name of said Stoner was stricken therefrom before it was actually executed, and a provision was inserted in said contract as follows: "The company further agrees that it will enter into an agreement with the Stoner Wall-Paper Manufacturing Company, of Des Moines, Iowa, which shall be in the form hereto annexed, marked 'Schedule D,' provided said Stoner Wall-Paper Manufacturing Company shall likewise execute such agreement." Schedule D, referred to, and attached to the contract between the plaintiff and the Continental Wall-Paper Company, does not in terms refer to the contract between the plaintiff and the said Stoner, of April 28, 1899; but such proposed contract, mentioned as 'Schedule D,' was based upon a proposition that had been discussed between the officers of the plaintiff and defendant, a memorandum of which had been made in writing on the 18th day of September, 1899, in which memorandum is a statement as follows: "Contract of April 28, 1899, between Liberty Wall-Paper Company and Thomas I. Stoner, to be canceled." The plaintiff claims that this agreement was assented to by the defendant, and that it entered into the contract with the Continental Wall-Paper Company in reliance upon such assent. The defendant denies that it ever assented to the arrangement mentioned in such memorandum. The defendant never signed the contract with the Continental Wall-Paper Company mentioned as "Schedule D." In October, 1899, plaintiff brought this action against the defendant to recover $1,200, the alleged value of manufacturing said samples from the blocks purchased by the defendant of the plaintiff. The defendant, in its answer, denies the allegations of the complaint relating to the manufacture of such samples. As a second defense, it alleges that in the month of August, 1899, plaintiff and defendant entered into a parol agreement whereby plaintiff agreed to manufacture and deliver to defendant paper hangings to the amount of about $15,000, to be printed from blocks theretofore purchased by the defendant from plaintiff, and that, as a part of said contract and order, plaintiff agreed to print and ship to the defendant the samples of said paper hangings, free of expense to the defendant. As a third defense, and as a counterclaim, defendant claims damages to the amount of $30,000 by reason of the alleged nonfulfillment by plaintiff of the agreement made by plaintiff with said Stoner April 28, 1899. It further alleges that said agreement was transferred to the defendant before the commencement of this action. To the counterclaim the plaintiff replied, denying that the contract of April 28, 1899, was made by any one authorized to act in its behalf, and further alleging that said contract of April 28, 1899, had been canceled by agreement of the parties. The case was tried before the court and a jury. At the close of the trial the plaintiff made a motion that the court direct a verdict for the plaintiff as to the counterclaim, which motion was granted. The court then submitted to the jury the questions arising on the issues joined on the complaint and answer thereto, and the jury found a verdict for the defendant.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

William E. Bennett and Edgar T. Brackett, for plaintiff.
John L. Henning, for defendant.

CHASE, J. Under the contract between the plaintiff and Thomas I. Stoner of April 28, 1899, there was no obligation resting upon Stoner, other than to purchase at least $25,000 net in paper hangings, as provided by the contract, and to pay therefor as provided therein. The contract is not a personal one, in the sense that Stoner was bound

to perform in person. Stoner had a right to assign the contract, or in case of his death his executors or administrators would have succeeded to his rights and liabilities under the contract. The obligations of Stoner under the contract could have been discharged by any one. If the assignment was made without the consent of the plaintiff, the obligations of the contract would still have rested upon Stoner, and resort could have been had to him for the fulfillment of the contract if the same had not been carried out and discharged by his assignee. Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018. An assignment of the contract by parol was sufficient to transfer the same to the defendant. Hooker v. Bank, 30 N. Y. 83; Doremus v. Williams, 4 Hun, 458; Risley v. Bank, 83 N. Y. 318; Id., 111 U. S. 125, 4 Sup. Ct. 322, 28 L. Ed. 374; Marcus v. Insurance Co., 68 N. Y. 625; Epstein v. Guaranty Co., 29 Misc. Rep. 295, 60 N. Y. Supp. 527. At the time of the trial an actual written transfer of the contract had been executed and delivered, and plaintiff will not be prejudiced by an adjudication of the rights between the parties to this action under the contract. Sheridan v. Mayor, etc., 68 N. Y. 30. The defendant claims, and Stoner testified on the trial, that the contract was assigned by parol, and that the contract itself was actually delivered to the defendant before the commencement of the action. The decision of the trial court, holding as a matter of law that the contract had not been assigned, was therefore erroneous. The questions as to whether the contract of April 28, 1899, had been released and abandoned by the parties interested therein, whether the plaintiff had assented to an assignment thereof from Stoner to the defendant, as well as the question whether an assignment had in fact been made by parol, and the contract delivered to defendant with intent to pass the title thereto, were questions of fact that should have been submitted to the jury. The contract in regard to making the samples of paper hangings by the plaintiff for the defendant was not in writing. The plaintiff contended that the defendant agreed to pay for the samples, but that it was agreed in connection therewith that in case the defendant gave to the plaintiff a further order for not less than $15,000 of paper hangings, and which order should be for at least 15,000 rolls of blanks and 10,000 rolls of gilts, no payment should be made for the samples. Plaintiff further contended that it had not received an order for paper hangings to the amount of at least $15,000 under such agreement, and that it is entitled to recover for the value of the samples, and evidence was received tending to substantiate its contention. The defendant contended that it never agreed to pay for the samples, but that it did agree to give to the plaintiff an order large enough so that the plaintiff could afford to make the samples for nothing, and that it was stated that such order should be for at least 10,000 rolls of blanks and 5,000 rolls of gilts, and that upon such statement the plaintiff agreed to make the samples for nothing. The defendant further claimed that it gave to the plaintiff an order in compliance with said agreement, and evidence was received tending to substantiate its contention. The defendant also contended that the plaintiff, by entering into the agreement with the Continental Wall-Paper Company, put itself in a

position where it was unable to fill any order given to it by the defendant, and that the officers of the defendant stated to it that they could not ship any goods to the defendant under the said contracts with it. At the close of the trial, after dismissing the counterclaim of the defendant, the court submitted to the jury the question relating to the claim of the plaintiff under its complaint, in a charge fairly presenting the contentions of the parties. No exception was taken to the charge. The determination of the jury in favor of the defendant should not be disturbed.

That part of the judgment entered upon the verdict affirmed, and that part which dismisses the counterclaim reversed, and new trial granted, with costs to the defendant to abide the event. All concur, except KELLOGG, J., dissenting; SMITH, J., not voting.