(41 Misc. Rep. 254.)

HUDSON RIVER WATER POWER CO. v. GLENS FALLS PORTLAND CEMENT CO. et al.

(Supreme Court, Special Term, Saratoga County. July, 1903.)

1. CONTRACT—CONSTRUCTION—ASSIGNMENT.

An electric power company contracted to supply a cement company with the electric energy for five years on monthly payments, the energy to be used in and upon the premises of the cement company. Thereafter the ·cement company assigned such contract to a lighting company, without the consent of the power company; the lighting company intending to use such energy on its premises and in its business generally, in a manner that would bring it in competition with the power company. *Held*, that such assignment without the consent of the power company did not give the lighting company the right to use the energy in its business, nor entitle it to compel specific performance by the power company.

2. SAME—ACCEPTANCE OF ASSIGNMENT.

The fact that an electric power company, after notice of the assignment of its contract with a cement company, to furnish it with electric energy, to an electric light company, accepted two monthly payments for such energy, does not show a ratification of such assignment by the power company, where there is no evidence that it knew the circumstances of the assignment, or the use to which the electric light company proposed to put the energy.

Action by the Hudson River Water Power Company against the Glens Falls Portland Cement Company and the Glens Falls Gas & Electric Light Company. Demurrer to counterclaim sustained.

Edgar T. Brackett, Richard L. Hand, and Henry W. Williams, for plaintiff.

Taylor, Anderson & Seymour, for defendant Glens Falls Gas & Electric Light Co.

JOHN M. KELLOGG, J. The plaintiff brings this action, asking to have it adjudged that the cement company is in default in the performance of a contract made between it and the plaintiff, and that the alleged assignment of said contract to the electric light company is void, and asks damages and equitable relief. The defendant light company interposes several defenses, and then sets up a counterclaim alleging that the plaintiff has violated the contract, and asking that it be adjudged that the assignment is valid, and that it recover damages of plaintiff, and have other relief. To this counterclaim the plaintiff

demurs upon the ground that it is insufficient in law upon the face thereof, and that it does not state facts sufficient to constitute a cause of action.  The question is, therefore, before the court, whether the electric light company, by the assignment of the contract in controversy to it, gained any right to use the energy in its business, so that it may have specific performance, and recover damages from the plaintiff for a breach of the executory provisions of the contract.  We do not view the question as one relating purely to the assignability of the contract, but whether the plaintiff sold generally to the cement company a certain amount of electrical energy, which might be used anywhere by any one, or agreed to supply to and for the cement company electrical energy to be used about its plant and in its works.  A few references to the contract and the situation of the parties enable us to determine fairly well what the parties had in mind as the subject of the contract, and upon what the minds of the parties met in the making of the contract, and then, if the language used by them in making it is sufficient, when fairly interpreted, to carry out that intention, the result gives us the true interpretation of the contract.  The contract recites that the cement company has its office and principal place of business at Glens Falls, which city is also the office and principal place of business of the power company, whose business is stated to be the development, transmission, and sale of electricity and electrical energy.  It also recites that the cement company desires to purchase energy of the power company, and to enter into a contract by which the power company shall deliver to the cement company, and the cement company shall receive and pay for, a certain amount of electrical energy.  In consideration of the premises it is agreed that the power company will, "upon the conditions, for the purposes and within the limits hereinafter stated, keep available for use and supply to and for the cement company, on the premises of the cement company, for the term of five years, electrical energy to the amount of 731.25 kilowatts, and such additional amount, not exceeding 731.25 kilowatts (making 1,462.50 kilowatts in all) as may be desired from time to time by the cement company."  It then provides that, if the cement company should require the additional energy, it shall, by telephone or telegraph, notify the power company of its anticipated requirements, and that the power company shall supply, and the cement company shall have the right to use, for a period not exceeding 15 minutes, to the extent of 900 kilowatts at any time, without notice.  It then provides, in the second paragraph, that the cement company shall pay to the power company for the said term of five years "for the right to use" the first 731.25 kilowatts $22,500 per annum, in equal monthly installments, on the 20th of each month, and that the cement company shall pay to the power company for all energy in excess of the first 731.25 kilowatts demanded by the cement company, whether the same is used or not, at a prescribed rate; and, in the third paragraph, that the instantaneous variation of sufficiency under a change of load in the cement company's plant, not exceeding 10 per cent., shall not exceed 2½ per cent. from the normal.  It then provides that the representatives of both companies shall have access to the measuring apparatus and the transmission lines on the premises of the cement company at

all times. In the seventh paragraph it provides that where accident occurs, interrupting the service, the power company shall give immediate notice, specifying the probable duration of the interruption, to enable the cement company to start its steam plant, and that the power company shall maintain a suitable telephone or telegraph between its substation and the office of the cement company at Glens Falls to provide for such notification. In the ninth clause it is provided that in case of "alleged deficiency of power, and the telephone is out of order, the cement company shall send a messenger to the substation of the power company, if it has one in the town of Queensbury within a half mile of the cement company's works." In the eleventh clause it provides that the cement company shall not be liable to pay for any energy it is unable to use during the suspension of operations as the direct and immediate result of fire doing damage to the premises where the power is ordinarily used. It provides that the agreement shall be voidable at the option of the cement company if the power company shall not take and pay for 50,000 barrels of cement as provided by agreement bearing even date. It provides for arbitration of all disputes and misunderstandings. The power company is to install upon the cement company's property an instrument for the measurement of energy, and various penalties are provided against the power company's failure to furnish the requisite power up to the full test of the contract, which penalties are to be abated from the contract price upon the next settlement.

The counterclaim alleges that the plaintiff, since the assignment of the contract to the light company, has contracted to furnish, and is furnishing, power to parties who had theretofore been buying power from said defendant, and is engaged in soliciting further orders from the defendant's customers for power, and that defendant is engaged in furnishing light in Glens Falls, with a rapidly increasing business, and procured the assignment of the said contract for the purpose of enabling it to carry on its duties and fulfilling its lighting contracts, and to meet the increased demands upon it for light, and, with its present facilities to generate power, it cannot produce a sufficient quantity to carry out its obligations. We think it is fair to assume that the cement company is a company manufacturing cement, in which business electrical energy might be desirable for operating its mill and machinery and lighting its works. It seems to me this contract was entered into by both parties with the understanding and the intent that the energy to be supplied by the plaintiff was to be used upon the premises of the cement company, and for the purposes of carrying on the business conducted by the cement company by it or its successors in said works, and that it was not the intention of either party that the energy might be resold to a rival company to compete in selling power in the market with the plaintiff's company.

The light company urges upon the court the following clauses in the contract as tending to show that the above conclusion is not correct: The tenth clause provides that the cement company "agrees as a condition precedent hereto, that the electrical energy or power hereby sold and to be taken by it, shall not be used or employed by it or its assigns during the continuance of this agreement for the

purpose of manufacturing pulp or paper or fibre of any kind." The fourteenth clause provides, "This contract shall inure to the benefit of and become binding upon the successors and assigns of the respective parties hereto." The provision as to the manufacturing of pulp and paper leaves the meaning of the contract that this energy is to be furnished to and for the cement company and its works, and for use upon its premises, and that the cement company shall not itself use said power, even upon said premises, for the manufacturing of pulp wood, or that any party to whom it sells its works, or any part of its works, shall not so use it. I do not consider that this fourteenth clause is repugnant to the views above stated. The word "assigns" immediately follows the word "successors," and is fully as consistent with the idea that the energy is to be used by the successor to the company in case it should be reorganized, or its assigns in case it should sell its property, as with the idea that it relates to assigns of the contract, rather than of the business and plant.

While it is undoubtedly the rule that executory contracts may ordinarily be assigned and performed by the assignee, unless the contract prohibits an assignment, or the terms of the contract show that the intention was that it should not be assigned, or the contract relates to matters strictly personal to the contracting parties, nevertheless it must be borne in mind that every man has the right to select and determine with whom he will contract, and cannot have another thrust upon him without his consent, for in most contracts the credit and substance of the party with whom you contract is considered, especially in cases where a credit is to be given. The rule is sometimes stated as follows:

"Rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." Pollock, Cont. (4th Ed.) marg. p. 425; Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246.

Here, under the contract, energy for a whole month was to be delivered between payments; and it must be that, in extending that credit, the personal character, business, and business standing of the contractor were taken into consideration, as well as the fact that the contractor was using the energy in a business as to the present success of which the power company probably had knowledge, and as to its future success were able to form some judgment. It may be answered that, notwithstanding the assignment, the cement company is still liable, and the power company, by gaining through the assignment the liability of the light company, has two parties responsible, instead of one. But upon this subject we must consider: By the assignment the light company assumes and agrees to pay the liability. A recognition of that assignment would leave, at most, the cement company liable simply as a surety, which liability might be lessened or destroyed by slight circumstances. A knowledge of the character, business, and personnel of the cement company, and the fact that it was to use the energy in its own business, might be better security to the power company than the fact that the energy was to be sold to

another, and be consumed by it before paid for, and by a rival in the business of the power company, and that the cement company was receiving no continuing benefit from the supply of energy. While the minimum of energy is fixed by the contract, the maximum and intermediate amounts that may be required are entirely personal to the cement company, and were undoubtedly taken into consideration by the power company in making the contract. It was able to judge whether the maximum amount would probably be required, while, if the contract is to be assigned to an unknown party, a consideration enters which had not been met. The cement company has only agreed to pay for any energy above the minimum which it demands. Suppose the light company makes demands above the minimum; is the cement company liable for it, or what is the status of the parties in relation to the excess of power ordered? Must the power company furnish it upon the sole credit of the light company, which it never agreed to trust? It cannot be that by assigning this contract the cement company has bound itself as surety to pay for any excess over the minimum which the light company may demand. Its rights in such a case would be strictissimi juris, and the contract provides it is liable only for such deliveries above the minimum quantity as it may direct. It should also be considered that this contract covers five years. The details contained in it are minute, and all misunderstandings or disagreements are to be referred to arbitrators to be selected one by each party, and the third by the two arbitrators so selected. It is quite probable that both companies knew this provision was not legally binding upon them, but each knowing the other inserted it relying upon the known character and standing of the other, and expecting it to be carried out in good faith. Such a clause, with an unknown party, would be of little value. The power company is to keep the energy available and the cement company is to pay for the right to use it. It is not necessarily a sale of even the minimum quantity. The power company must be ready to supply it. This fact may have been deemed of importance. The power company could form no estimate of how much of the minimum or maximum a stranger might use. It seems to me this contract is made with reference to the two contracting parties, and that it cannot be said that the power company would have entered into the same contract with any other person coming along. The light company refers with confidence to Rochester Lantern Co. v. S. & P. P. Co., 135 N. Y. 210, 31 N. E. 1018. But in that case the property sold was to be paid for upon delivery, and the continued solvency and business capacity of the contracting party was therefore unnecessary to be considered. It was necessarily of no importance to the defendant who had or used the dies. It could have no interest in that matter. We are also referred to Liberty Wall Paper Co. v. Stoner W. P. Co., 59 App. Div. 353, 69 N. Y. Supp. 355, affirmed in 170 N. Y. 582, 63 N. E. 1119. This is not an authority upon the assignability of such a contract, for in the agreement by Stoner, the party to the contract, to assign the contract to the defendant wall paper company, it was understood that, if the other party to the contract objected to the assignment, Stoner himself was personally to carry out the contract, and Stoner was in fact the Stoner

Wall Paper Company, and did all the business in relation to the matter, and before suit brought, and after alleged breach of the contract, he assigned to the defendant company any cause of action he might have.

But it is urged that a copy of the assignment was delivered by the light company to the plaintiff, and that the light company, as such assignee, paid two installments becoming due upon said contract, and that the plaintiff has therefore recognized and ratified the assignment. As before stated, the counterclaim fairly shows that the purpose of the light company in taking an assignment of this contract is to enable it to carry out its lighting contracts apparently in rivalry with the power company. There is no allegation that at the time the plaintiff accepted the payments it knew of the use to which the light company proposed to put the energy. It does not appear that the plaintiff knew the circumstances under which the assignment was made. Had the light company become the successor to the cement company, in its business, works, and plant, the assignment would have been entirely valid. It is probable, also, that it is admissible for the light company to take and hold an assignment of this contract, as collateral or otherwise, and to furnish light and power to the cement company or its plant on terms mutually agreeable. If plaintiff was in default, as defendant implies, the cause of action was assignable. I do not consider that the contract is entirely unassignable, but, as it appears that the energy is to be used by a stranger in a business and upon premises outside of the plant and works and business of the cement company, the light company is not entitled to any relief as against the plaintiff, for such use of the energy is in violation of and beyond the terms of the contract, when properly construed with reference to the situation of the parties and the intention of the contracting parties, as found in the contract itself. Such proposed use is a violation of the contract, and plaintiff may properly refuse the energy for such purposes. The demurrer is therefore sustained. An order may be submitted to the opposite side, and, if not agreed upon, will be settled by the court.

Demurrer sustained.