(110 App. Div. 157.)

### JAMES H. DUNHAM & CO. v. McCANN et al.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

PRINCIPAL AND SURETY—ASSIGNMENT OF BOND—RIGHTS OF ASSIGNEE.

> After an assignment for benefit of creditors an arrangement was made for a reassignment to the assignor, and he gave the assignee a bond conditioned to protect the assignee from expenses by reason of the assignment and reassignment, and the assignee, in consideration of such sums as might thereafter be advanced to him as assignee by plaintiff, assigned the bond to plaintiff. Plaintiff was surety on the assignee's bond. *Held*, that plaintiff could not recover of the sureties on the bond given to the assignee for moneys advanced after the assignment on account of expenses and disbursements by the assignee growing out of the assignment and reassignment.

> [Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Surety, § 124.]

Laughlin, J., dissenting

Appeal from Special Term, New York County.

Action by James H. Dunham & Co. against Patrick McCann and others. From a judgment in favor of plaintiffs, certain defendants appeal. Reversed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William R. Harris, for appellant Heuberer.
Paul R. Towne, for appellant Nicoll.
G. A. Seixas, for respondents.

INGRAHAM, J. The bond sued on was upon the principle that the principal, McCann, should keep "Thomas O'Brien harmless and save and protect him from all expenses and disbursements by reason of said assignment and reassignment and shall pay and discharge all said disbursements and expenses until said assignee is finally discharged and released from all responsibility, then the obligation to be void; else to remain in full force and virtue." The complaint alleges that on the 19th day of December, 1881, the said Thomas O'Brien duly assigned and delivered said bond of indemnity, together with all his rights thereunder, to the plaintiff; that the consideration of said assignment was certain moneys theretofore advanced by the plaintiff to said O'Brien, as such assignee, on account of the costs and expenses incurred and paid by him by reason of and arising out of said general assignment and said reassignment, and parting with said assigned property, and such other and further sums as plaintiff might, thereafter, advance to said O'Brien, as such assignee, on the same account and purpose. The complaint then alleges that after the assignment by said O'Brien to the plaintiff of said bond of indemnity, and at various times between June 1, 1882, and June 30, 1897, the plaintiff paid and advanced to said O'Brien, as such assignee, on account of the expenses and disbursements paid and incurred by said assignee, arising and growing out of said assignment and reassignment, the sum of $4,792.60.

I do not see how the assignment of this bond to the plaintiff could impose any liability upon the surety for the money subsequently paid to O'Brien or on his account. The obligation ran to O'Brien, his legal representatives or assigns, but it was to be void if McCann should keep said O'Brien harmless and save and protect him from all expenses and disbursements by reason of said assignment and reassignment. As I read the complaint, there is no allegation of any breach of that condition. O'Brien has paid no money on account of the assignment or reassignment. It is not alleged that the plaintiff loaned him any money, but the plaintiffs claim to recover as "the sole, true, and lawful owner of the bond," and that, being the owner of the bond, he is entitled to recover from the sureties the amount that he has paid to O'Brien on his account. This the sureties did not obligate themselves to pay, and the assignment of the bond and the subsequent payment by the plaintiff, as I view it, gives no cause of action against the surety.

I think the judgment should be reversed, with costs, and the demurrer sustained, with costs, with leave to plaintiff to amend complaint on payment of costs in this court and in the court below.

PATTERSON and McLAUGHLIN, JJ., concur.

LAUGHLIN, J. (dissenting). The action is by the assignee of a bond to enforce the obligations thereof. The bond was given by an as-

signor for the benefit of creditors with two sureties to his assignee as a condition of returning to the assignor the entire estate pursuant to a compromise agreement between the latter and his creditors.

The first question presented by the demurrers is whether a cause of action is stated; and it depends upon the assignability of the bond. The allegations of the complaint, so far as material to this question are that on the 17th day of November, 1879, the defendant Patrick McCann made a general assignment for the benefit of creditors pursuant to the laws of the state of New York to one Thomas O'Brien; that the assignee duly qualified, giving a bond with the plaintiff as one of his sureties, and entered upon the discharge of the duties of his trust; that on or about the 29th day of December, the same year, the assignor made an agreement with his creditors whereby he compromised their claims for one-third of the amounts thereof, which he agreed to pay on condition that the property be restored to him and the creditors requested the assignee to reassign and deliver the assigned property to the assignor, which he agreed to do upon condition that the assignor gave him a bond of indemnity with two sureties; that the bond upon which the action is brought, with the assignor as principal and George B. Amerman and Jacob Semel as sureties, was duly executed on that day, and the property was reassigned and delivered to the assignor; that the penalty of the bond was $10,000, and it contained recitals of the circumstances under which and the purpose for which it was given, and was conditioned "that if the above-bounden Patrick McCann, his heirs, executors, and administrators, shall keep said Thomas O'Brien harmless and save and protect him from all expenses and disbursements by reason of said assignments and reassignments, and shall pay and discharge all said disbursements and expenses until said assignee is finally discharged and released from all responsibility, then the obligation to be void, else to remain in full force and virtue"; that thereafter and subsequent to the 1st day of June, 1882, "certain liabilities, expenses, charges, and disbursements attached and arose by reason of and growing out of said assignment and reassignment of said estate, which said Thomas O'Brien became liable to and did assume, incur, and pay, and said O'Brien was compelled to and did, at divers times between said 1st day of June, 1882, and the 30th day of June, 1897, pay, lay out, and expend, in and about the business and matters attaching and arising out of said assignment and reassignment and restoration of said property and estate, and in consequence thereof various sums amounting in all to $4,792.61," and that said O'Brien has not been discharged or released from his duties or responsibilities as such assignee; that on the 19th day of December, 1881, the assignee, O'Brien, in consideration of moneys theretofore advanced by plaintiff to said O'Brien as assignee "on account of the costs and expenses incurred and paid by him by reason of and arising out of said general assignment and said reassignment, and parting with said assigned property, and such other and further sums as the plaintiff might thereafter advance to said O'Brien as such assignee, on the same account and purpose," assigned and delivered the bond to the plaintiff; that thereafter at various times between June 1, 1882, and June 30, 1897, "this plaintiff paid and advanced to and for said O'Brien, as such assignee, on account of the expenses and disbursements paid and incurred

by said assignee, arising and growing out of said assignment and reassignment, the full sum in all of $4,792.60, and that the said sum was actually and necessarily incurred and paid by said assignee in and about the business and litigations arising and growing out of said assignment and reassignment, and that the same properly and necessarily arose and grew out of and were paid in and about the defense of various suits, proceedings, and litigations commenced and carried on against said O'Brien as such assignee by said McCann in his own name, and procured by him to be brought or taken by others in his interest, and which related to the said general assignment and to the said assigned estate and to said reassignment, and were so brought by said McCann and others in hostility thereto; that plaintiff is now the sole, true, and lawful owner of said bond; and that the said sum of four thousand seven hundred ninety-two and $^{60}/_{100}$ dollars ($4,792.60) is now justly due to him thereon from the defendants by reason of the premises."

The theory of the appellants is that the action cannot be maintained because the bond was assigned before the damages sought to be recovered had been sustained by the assignee. There can be no doubt, on the allegations of the complaint, that a cause of action had accrued on the bond at the time it was assigned. Even though it be a special and personal contract, and not generally assignable, still it would be assignable, once a cause of action accrued thereon (Everson v. Gere et al., 122 N. Y. 290, 25 N. E. 492), and therefore, to the extent that a cause of action had accrued, it was assignable at the time the assignment was made, because part of a liability on a contract may be assigned (Chambers v. Lancaster, 160 N. Y. 342, 54 N. E. 707). This, however, is not decisive of the question, for the reason that no recovery is sought for the moneys paid at the time of or prior to the assignment. The liabilities for which a recovery is sought are alleged to have been paid and adjusted between the 1st day of June, 1882, and the 30th day of June, 1897. The bond in form is assignable, the undertaking being to pay to O'Brien, "his legal representatives or assigns." It may be a special and personal guaranty, but in the view I take of the case that is not very material. It is clear that, upon adjusting any claim presented to him as assignee, the obligee would have had the right to assign the cause of action and the bond. The equivalent of that was done in this case, according to the allegations of the complaint. There was a good consideration for the assignment. The plaintiff had become O'Brien's surety as assignee, and as between them O'Brien was primarily responsible. Upon the inducement of this bond, instead of retaining the assigned estate and administering the trust for the benefit of creditors, as required by law, whereby no damages would have befallen his surety, he delivered the property back to the assignor. If he had adjusted these liabilities himself, he would have had a cause of action on the bond. He may not have had the money with which to settle the claims made against him for failing to perform his trust, and for that reason he may have induced the plaintiff to advance the money as alleged. The fair construction of the allegations of the complaint is that these claims and liabilities were settled by O'Brien himself with funds advanced by the plaintiff, and that they were advanced upon the agreement and understanding that the plaintiff was to succeed to O'Brien's rights under the bond. The form of the as-

signment was a continuing request to the plaintiff to advance moneys from time to time as might be necessary to meet the claims on this understanding. No written assignment of the bond was necessary, delivery alone was sufficient, and delivery had been made. Epstein v. U. S. Fidelity & Guaranty Co., 29 Misc. Rep. 295, 60 N. Y. Supp. 527; Liberty Wall Paper Co. v. Stoner Wall Paper Mfg. Co., 59 App. Div. 353, 69 N. Y. Supp. 355, affirmed 170 N. Y. 582, 63 N. E. 1119; Barnett v. Prudential Ins. Co., 91 App. Div. 435, 86 N. Y. Supp. 842. Even though, therefore, the first legal assignment of the bond would not suffice, there was an equitable assignment at the time of each payment and upon the settlement of the claim by the assignee which may be enforced against the principal and sureties. Evansville Nat. Bank v. Kaufmann et al., 93 N. Y. 273, 288, et seq., 45 Am. Rep. 204; Dunlop v. James, 174 N. Y. 411, 67 N. E. 60. The allegation that the bond was duly assigned imports that the assignment was sufficient both in form and substance, and would admit proof, if necessary, that the plaintiff agreed to advance the funds necessary to discharge the liability of the obligee as it matured from time to time and this he did. Levy v. Cohen, 103 App. Div. 195, 92 N. Y. Supp. 1074.

The other grounds of demurrer are that there is a defect of parties and that causes of action have been improperly united. Amerman, one of the sureties, died on the 1st day of June, 1883, during the period within which the liability became fixed, leaving a widow and three children, and a last will and testament disposing of his entire estate. One of the children who survived the testator died before the commencement of the action, leaving a husband, Charles E. Heuberer, who was appointed her administrator. The executors of the deceased surety were not made parties. It is urged that they fully discharged their duties and finally accounted and distributed the estate in accordance with a decree of the court; but it is not alleged that they were finally discharged. It appears that the testator left a parcel of real estate to his widow for life, with the remainder to his three children, and with a power of sale thereof to the executors which they have never exercised. The widow and two of the testator's children were preferred legatees, and all of the children are residuary legatees. The estate was sufficient to pay the debts, expenses of administration, preferred legacies, and a residuary legacy to each of the children of more than $5,000. One of the daughters having died before the payment of the residuary legacy, payment was made to her administrator. The action is brought against the principal and surviving surety, the widow and two surviving children of the deceased surety, who are preferred and residuary legatees and also devisees with their deceased sister of the remainder of the real estate after the life tenancy of their mother, the administrator of the deceased daughter of the deceased surety, who was also a residuary legatee and one of the devisees of the remainder of the real estate after the life tenancy and against her two children, also her husband and the husband of a surviving daughter of the deceased surety. There is no theory upon which a cause of action is stated against the children of the deceased daughter of the deceased surety. Their parent would have been liable as legatee and devisee for a part or all of the property received from the testator in the contingencies and to the extent prescribed by Code Civ. Proc. §§

1843–1860. The liability of the heirs, legatees, or devisees of a testator for his debts is statutory and cannot be extended. The Legislature has not extended it to the heirs or next of kin of a deceased heir, legatee, or devisee. Rogers v. Patterson (Sup.) 29 N. Y. Supp. 963. So also the liability of a deceased heir, legatee, or devisee of the debtor may be enforced against his estate like any other claim. It is evident, however, that since the heirs of the deceased heir, legatee, or devisee are not personally liable, they are neither necessary nor proper parties to a proceeding to enforce a liability against the estate of their intestate. Their mother, however, was bequeathed one-third of the remainder of the real estate, and this they, as her heirs, inherit, subject to the life estate of their grandmother. It is claimed that the object of the action is to reach this real estate and impress upon it a lien and have it sold for the payment of the plaintiff's claim, and that, therefore, they are interested. I know of no provision of law that will authorize the sale of their interest in that real estate by any judgment that may be rendered in this action. As already observed, to the extent that their mother was liable, the liability may be enforced against her estate; but it is evident that her real estate can only be reached after her personal estate is exhausted, and then only through proceedings in the Surrogate's Court for the sale thereof to pay her debts. The complaint, therefore, fails to state a cause of action against the infant appellants, the heirs of the deceased heir of the deceased surety, and the demurrer should be sustained.

The husband of the deceased daughter of the deceased surety and the husband of a surviving daughter are the other individual appellants. It is not alleged that they have received any of the property of the testator. The only theory upon which they appear to have been made parties is that they may have some rights as tenants by the curtesy of the estates in remainder. As to the appellant Heuberer whose wife is dead, it is clear that he has, and can have, no interest as tenant by the curtesy, because his wife was not seised in possession during her lifetime. The appellant Nicoll may become a tenant by the curtesy if he shall survive his wife and she shall die seised of the premises in possession; but he has no present interest which the law recognizes. A cause of action, therefore, is not stated against either of these appellants, and their demurrer should have been sustained.

The remaining appellant is the administrator of the deceased daughter of the deceased surety. The residuary legacy given by the will of the deceased surety to his daughter was paid to her administrator. To the extent of part or all of that, as already observed, the administrator may be liable to the plaintiff. The question now arises on that part of the demurrer which challenges the right of the plaintiff to join in the action against the principal and surviving surety the widow and legatees and devisees of the deceased surety. It is claimed that the complaint, in this regard, embraces two causes of action, one of legal and the other of an equitable nature. The cause of action, however, is upon the bond and for the damages sustained against which the bond indemnified the obligee. The bond is joint and several in form. The principal and sureties could have all been joined in one suit, and there was a right of contribution between the sureties.

The death of the surety did not discharge his estate. The surviving surety has the same right of contribution against the estate of the deceased surety as he would have had against the surety, if living. It being alleged that the entire estate has been distributed, the liability is primarily enforceable against the widow and residuary legatees, and they may all be joined in one action. Code Civ. Proc. §§ 1837, 1841, 1843, 1848, 1849, 1860. A cause of action is therefore stated against them, and I fail to see how they are prejudiced by being sued with the principal and surviving surety. The liability of each to the plaintiff will be adjudicated, and the liability of the defendants as between themselves may also become fixed. Hamlin v. Smith, 72 App. Div. 601, 76 N. Y. Supp. 258. The presence of the principal and surety will require no other or different proof that would be essential if they were not joined. They may have cause to complain, but it does not appear that they have objected. If they are unnecessary parties to an action to enforce the liability against the estate of the deceased daughter of the deceased surety, that is not a ground of demurrer available to the administrator.

It follows, therefore, that the interlocutory judgment, in so far as it overrules the demurrer of the infant appellants and of appellants Nicoll and Heuberer individually, should be reversed, with separate bills of costs, and their demurrers should be sustained, with costs, and final judgment should be directed in their favor, and the interlocutory judgment, in so far as it overrules the demurrer of the administrator appellant, should be affirmed, with costs.