PASQUALE GARGIULO, Plaintiff, v. CALIFORNIA WINERIES
AND DISTILLERIES, Defendant.

(Supreme Court, New York Trial Term, June, 1918.)

Contracts — action for breach of — assignments of — corporations —
damages — when motion to set aside verdict denied.

Plaintiff doing business under the firm name of " P. Gar-
giulo & Co." entered into a contract under the date of Septem-
ber 13, 1912, with defendant, a California corporation, and
negotiated through its New York manager, subject to the
approval of the home office, for the shipment to him of a certain
number of barrels of wine by monthly deliveries extending over
a year beginning December, 1912, as directed by plaintiff, and
to be paid for thirty days after the arrival of each shipment.
About December first, the first shipment was ordered through
said manager, who promised to forward the order to defendant's
home office but plaintiff, not having heard from defendant for
several weeks, called upon the manager about December twenty-
second, who declared that he did not understand the failure to
ship but ascribed the delay to the rush of business at that
season. On October 16, 1912, plaintiff caused to be organized
a corporation under the name of " P. Gargiulo & Company,
Inc.," the business and assets of which were plaintiff's and were
managed and controlled by and through him for all practical
purposes as absolutely as when he possessed them under the
old firm name, as was fully explained to defendant's said man-
ager. On January 4, 1913, plaintiff, by a letter directed to de-
fendant at its New York address signed " P. Gargiulo & Com-
pany, Inc.," ordered another shipment as per the contract and
the receipt of the letter was acknowledged with a promise that
it would have immediate attention. About two weeks later
defendant's manager inquired by telephone as to the incorpora-
tion of the business and asked plaintiff to write a letter stating
that he had transferred all the assets of the old business to the
corporation and, when plaintiff replied that the wine contract
had not been transferred, the manager told him to put that in
the letter too, whereupon plaintiff wrote the letter adding that
the new concern had " assumed all the responsibilities of the

former concern's contract with you people." About a week later there came a letter from defendant's home office addressed to the corporation stating "we have no order from or contract with you for any port wine," to which plaintiff replied by telegram in the name of the corporation asserting the existence of the contract for wine and insisting upon its performance. Not hearing from defendant plaintiff sent another telegram to it under date of February 13, 1913, and signed by his old trade-name, directing the shipment of a certain number of barrels under the contract, which he testified had been reassigned to him before he sent said telegram. Defendant replied by wire denying any contract with plaintiff and suggesting that he see the New York manager, to whom it was writing fully, and, though plaintiff did call, no further explanation was given and no wine was ever sent to him under the contract. In an action to recover damages for the breach of the contract, *held,* that as neither plaintiff's ability to discharge the obligations of the contract nor the solvency of the corporation was ever called in question and that as the bad faith of defendant was manifested in its desire to be rid of its contract obligation, the price of the wine having rapidly advanced before the final deliveries were to have been made, the claim of defendant that by the assignment or attempted assignment of the contract to the corporation defendant was relieved of its obligation thereunder, on the ground that the contract was not assignable without its consent, was a mere pretext and legally insufficient to relieve the defendant, and that a motion to set aside a verdict in favor of plaintiff will be denied.

MOTION to set aside a verdict and for a new trial.

Morris Eder (I. Gainsburg, of counsel), for plaintiff.

John T. Sturdevant (William A. DeFord, of counsel), for defendant.

FORD, J. After rendition of a special verdict finding the market price from which the damages could be computed, a general verdict was directed in favor of the plaintiff. The question here arises upon a motion

to set aside the verdict and for a new trial. Plaintiff was doing business as a wine and liquor merchant under a trade name, and entered into a contract with the defendant, a California corporation, for the shipment to him in New York of 750 barrels of wine by monthly deliveries, extending over a year beginning December, 1912, as directed by plaintiff, and to be paid for thirty days after each shipment arrived. The contract was negotiated through the New York manager of the defendant, subject to the approval of the home office in San Francisco. Notification dated October 2, 1912, was sent by mail to the plaintiff from the New York office advising him of defendant's final acceptance of the contract. About December first or second plaintiff ordered the first shipment of seventy-five barrels through the New York manager, who promised to forward the order to the California office at once. Plaintiff heard no more from the defendant for several weeks, when he called upon the New York manager about December twenty-two or twenty-three, who declared that he did not understand the defendant's failure to ship as directed, but ascribed the delay to the rush of business at that season. In the meantime plaintiff had caused to be organized a corporation (since legally dissolved) under the name " P. Gargiulo and Company, Inc.," which took over his business, up to that time transacted under the name " P. Gargiulo & Co." The certificate of incorporation was dated October 16, 1912. The plaintiff owned practically all the issued stock, was president and treasurer, and signed the checks for the company. His brother acted as vice-president and his bookkeeper as secretary, neither of whom owned any stock. In brief, the business and assets of the corporation were plaintiff's, and were managed and controlled by him and through him for all practical purposes as absolutely as when he

possessed them under the name of P. Gargiulo & Co., as was fully explained to defendant's New York manager. On January 4, 1913, he ordered by letter another shipment, as required by his contract. This was directed to the defendant at its New York address, but was signed "P. Gargiulo & Company, Inc." This letter was acknowledged by defendant's New York office, with a promise that it would have immediate attention. On January 17, 1913, the New York manager called plaintiff on the telephone and inquired about the incorporation of the business, and asked plaintiff to write a letter stating that he had transferred all the assets of the old business to the corporation. When plaintiff replied that the contract for the wine had not been transferred, the manager told him to put that in too. Accordingly plaintiff wrote the letter, adding that the new concern had " assumed all the responsibilities of the former concern's contract with you people." Under date of January 24, 1913, the defendant sent from the home office a letter addressed to " P. Gargiulo & Co., Inc.," stating " we have no order from or contract with you for any port wine." To this plaintiff replied by telegram in the name of the corporation, asserting the existence of the contract for 750 barrels of wine and insisting upon its performance. Hearing nothing further from defendant, plaintiff sent another telegram to it, dated February 13, 1913, and signed " P. Gargiulo and Co.," his old trade name, directing the shipment of seventy-five barrels of wine on his contract of September 13, 1912. He testified that the corporation had reassigned the contract to him before this message was sent. Defendant replied by wire, denying that it had any contract with plaintiff, and suggesting that he see its New York manager, to whom it was writing fully. Plaintiff did call, as suggested, but never received any

further explanation. No wine was ever sent to him under the contract, and he brings this suit, claiming substantial damages for the breach. Defendant's defense is that by the assignment or attempted assignment of the contract to the corporation it was relieved of its obligations to the plaintiff, because, as it contends, the contract was not assignable without its consent. Upon this question *Devlin* v. *City of New York,* 63 N. Y. 8, is the leading New York case. It involves the assignability of a street cleaning contract which contained no provision relating to its assignability as the appeal book discloses. In that case the Court of Appeals laid down these general principles: "The assignability of a contract must depend upon the nature of the contract and the character of the obligations assumed rather than the supposed intent of the parties, except as that intent is expressed in the agreement. Parties may, in terms, prohibit the assignment of any contract and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations. But when this has not been declared expressly or by implication, contracts other than such as are personal in their character, as promises to marry or engagements for personal services requiring skill, science or peculiar qualifications, may be assigned, and by them the personal representatives will be bound. In *Hyde* v. *Windsor* (Cro. Eliz. 552) it was said that executors are bound by all covenants of their testator, whether named or not, ' unless it be such a covenant as is to be performed by the person of the testator, which they cannot perform.' If the contract be personal and the performance of the party himself be the essence thereof, it neither devolves upon his representatives, nor can it be assigned. *White's Ex'rs* v. *Commonwealth,* 39 Penn. St. 167. When the contract is executory in its nature, and an assignee or

personal representative can fairly and sufficiently execute all that the original contractor could have done, the assignee or representative may do so and have the benefit of the contract." In brief public policy favors the assignability of contracts as facilitating commerce and its complex transactions unless forbidden by the contract itself or by the other consideration mentioned. There are *dicta* to be found in some New York cases which indicate that an extension of credit, as in a contract of sale, for example, would destroy its assignability unless the other party assented to the assignment. But in no case called to our attention in the voluminous brief submitted by defendant's counsel is this question squarely passed upon. Here we have one of the original contracting parties seeking to enforce a right against the other original party under the contract made between them. Nearly all the cases cited involve the assertion of some right by the alleged assignee against one of the contracting parties or *vice versa*. It has been repeatedly held that an assignee has no enforcible rights where the contract was not assignable, but those decisions are not in point here. If the rights of one of the parties to a contract could not pass by assignment to a third party they must of necessity remain in the party who attempted to assign. In *New England Iron Co.* v. *Gilbert El. R. R. Co.*, 91 N. Y. 153, where the question was whether a contract that had been assigned by a corporation to trustees by a trust deed and by them reassigned to the same corporation could be enforced by it against the other original contracting party, the court significantly remarks: " The defendant contends that the contract was not assignable. If that should be conceded it would follow that it was not embraced in the trust deed, and the question before us would be easily answered." That reasoning applies here. Plaintiff as

P. Gargiulo & Co., after he found he could not get his wine under that name, assigned his contract to P. Gargiulo & Company, Inc., at the request of defendant's New York manager and tried to get it under the name of the corporation. The contract having been repudiated when compliance was demanded in that name, he reassigned it to himself and tried again as original contractor with like failure. So if the contract was not assignable plaintiff never parted with his rights under it and is now the proper party to enforce them. But upon the bare question of the assignability of the contract I am of the opinion that it could be assigned without the defendant's consent, notwithstanding the extension of credit to the plaintiff, under the authority of *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209. The appeal book in this case shows that one Kelly intended to put upon the market a certain kind of lantern. He contracted with the defendant by letters which passed between them for dies to be used in the manufacture of this particular lantern, and for this purpose a sample lantern and its component parts were submitted to defendant. Nothing was said about terms of payment, the defendant merely stating in its last letter closing the contract: " We have entered your order for 15 dies. * * * Upon receipt of your lantern and your samples will at once get your work out and ship you as fast as possible." Manifestly this was an extension of credit. Aside from the fact that payment was not expressly required immediately on delivery, the moment the defendant started work on the dies it began to extend credit to Kelly. They were to be made especially for use in making the lantern which Kelly had designed, and would be of little or no value to the defendant except as junk unless Kelly took and paid for them. While the work was under way Kelly caused the plaintiff corporation to be organized

with himself as president and assigned the contract to it without the knowledge or consent of the defendant. The action was for damages resulting from breach of the contract by the defendant, and the court upheld the right of the plaintiff to recover as Kelly's assignee, saying: " There is no doubt that Kelly could assign this contract as he could have assigned any other chose in action, and by the assignment the assignee became entitled to all the benefits of the contract (*Devlin* v. *City of New York,* 63 N. Y. 8). The contract was not purely personal in the sense that Kelly was bound to perform in person, as his only obligation was to pay for the dies when delivered, and that obligation could be discharged by any one. He could not, however, by the assignment, absolve himself from all obligations under the contract. The obligations of the contract still rested upon him, and resort could still be made to him for the payment of the dies in case the assignee did not pay for them when tendered to it. After the assignment of the contract to the plaintiff the defendant's obligation to perform still remained, and that obligation was due to the plaintiff, and for a breach of the obligation it became entitled to some damages, and so we are brought to the measure of damages in such a case as this.'' The *Rochester Lantern Co.* case was followed in *Liberty Wall Paper Co.* v. *Stoner W. P. Co.,* 59 App. Div. 353, which was affirmed by the Court of Appeals without opinion 170 N. Y. 582. In the latter case, which was not cited by counsel, the contract was between the plaintiff and one Stoner for the sale of paper to the latter, with express provision for an extension of credit of thirty days to Stoner, yet the court held: " Under the contract between the plaintiff and Thomas I. Stoner of April 28, 1899, there was no obligation resting upon Stoner other than to purchase at least $25,000 net in paper hangings, as provided by

the contract, and to pay therefor as provided therein. The contract is not a personal one in the sense that Stoner was bound to perform in person. Stoner had a right to assign the contract, or in case of his death his executors or administrators would have succeeded to his rights and liabilities under the contract. The obligations of Stoner under the contract could have been discharged by any one. If the assignment was made without the consent of the plaintiff, the obligations of the contract would still have rested upon Stoner, and resort could have been had to him for the fulfillment of the contract if the same had not been carried out and discharged by his assignee (*Rochester Lantern Co.* v. *Stiles & Parker Press Co.,* 135 N. Y. 209).'' From first to last the defendant in the case at bar was dealing with Gargiulo and no one else, and he made every reasonable effort to obtain the wine he had purchased from the defendant. He at all times was personally responsible for the payments called for by the contract. Neither his ability to discharge the obligations nor the solvency of the assignee corporation was ever called in question. On the other hand, the bad faith of the defendant is manifest. The contract price of the wine was only fifteen cents a gallon, but it rapidly advanced to thirty-seven and one-half cents a gallon before the final deliveries were to have been made. The defendant undoubtedly desired to get rid of his contract obligations, and seized upon the assignment of P. Gargiulo & Co. to P. Gargiulo & Co., Inc., as a pretext to avoid them. That pretext was legally insufficient, in my opinion, and the motion to set aside the verdict will therefore be denied. Thirty days' stay of execution and sixty days to make a case will be granted.

Motion denied.